# IN THE COURT OF APPEALS OF IOWA

No. 21-1066
Filed April 13, 2022

**IN THE INTEREST OF K.M.,**
**Minor Child,**

**A.J., Mother,**
　　　Petitioner-Appellee,

**L.M.-P., Father,**
　　　Respondent-Appellant.
_____


Appeal from the Iowa District Court for Polk County, Scott D. Rosenberg,

Judge.


A father appeals a juvenile court order terminating his parental rights.

**AFFIRMED.**

Raya D. Dimitrova of Carr Law Firm, P.L.C., Des Moines, for appellant.

Amanda L. Green of Takekawa & Green, PLLC, Ankeny, for appellee.

Kelly M. Ramsey of Ramsey Law PLC, West Des Moines, attorney and

guardian ad litem for minor child.

Considered by Vaitheswaran, P.J., Chicchelly, J., and Vogel, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206

(2022).

**VAITHESWARAN, Presiding Judge.**

A mother petitioned to terminate a father's parental rights. The juvenile court granted the petition. On appeal, the father contends he did not abandon the child because the mother, "as the person having legal custody of the minor child, took steps to prevent [him] from seeing the minor child on a monthly basis when physically and financially able to do so and from communicating with him or with her," and "despite his incarceration, [he] continued to make payments towards the financial support of the child." He also contends termination of his parental rights is not in the best interests of the child.

The district court terminated the father's parental rights pursuant to Iowa Code section 600A.8(3) and (4) (2020). Those subsections authorize termination where:

> 3. The parent has abandoned the child. For the purposes of this subsection, a parent is deemed to have abandoned a child as follows:
>
> . . . .
>
> b. If the child is six months of age or older when the termination hearing is held, a parent is deemed to have abandoned the child unless the parent maintains substantial and continuous or repeated contact with the child as demonstrated by contribution toward support of the child of a reasonable amount, according to the parent's means, and as demonstrated by any of the following:
>
> > (1) Visiting the child at least monthly when physically and financially able to do so and when not prevented from doing so by the person having lawful custody of the child.
> >
> > (2) Regular communication with the child or with the person having the care or custody of the child, when physically and financially unable to visit the child or when prevented from visiting the child by the person having lawful custody of the child.
>
> . . . .

> 4. A parent has been ordered to contribute to the support of the child or financially aid in the child's birth and has failed to do so without good cause.

Iowa Code § 600A.8(3)(b), (4). "In making a determination, the court shall not require a showing of diligent efforts by any person to encourage the parent to perform the acts specified in paragraph 'a' or 'b.'" *Id.* § 600A.8(3)(c).

Our de novo review of the record reveals the following facts. The child was born in 2007. He was thirteen at the time of trial and in eighth grade.

The mother left the father before the child's first birthday. A temporary custody order was obtained from a Kansas court, where both parents then lived. Less than one month later, the father was arrested for robbery and he went to prison for ten years.

The father had limited contact with the child during those years. The mother brought the child to visit him in prison "[m]aybe once a year" until the child was around "five or six" years old. The father wrote letters to the child, sending "[p]robably around 40" during his incarceration. And there were "occasional" phone calls, possibly every weekend, which the mother answered "when [she] was available."

In early 2018, the mother learned that the father was to be released from prison. She "filed for sole custody" in Kansas. The incarcerated father represented himself at the hearing. The district court granted the mother's request for sole custody and her request for abatement of the father's parenting time. The court prohibited the father "from demanding parenting time unless or until it is authorized by this [c]ourt and a reasonable plan for reintroduction and reintegration is developed and approved by the [c]ourt."

Recalling this language, the mother testified the order "required that . . . upon release, if [the father] wanted to see [the child], he was to set up supervised visitations through the courts."[1] Accordingly, when the father's mother "reached out to" her in 2018 and told her the father wanted to see his child, the mother informed her "he needed to go through the courts and set up supervised visitations." The mother was unaware of any motions or applications to set up supervised visits.

In 2019, mother and child moved to Iowa. The father was able to get in touch with her by phone because she kept the same phone number for "[t]en, eleven, twelve years." She recalled "one voice mail" from the father after his release. Although the father testified he regularly phoned the child, the mother said she did not recall receiving any phone calls from him after that point.

The father admitted it was his "responsibility to stay in [his] son's life" and, he commendably recognized the importance of his role as "a father." That said, he did not attempt to set up supervised visits from July 2018, when he was released from prison, until after the mother filed the termination petition.

The father was initially ordered to pay $392 per month in temporary child support. That amount was later reduced to $177. The mother testified she received child support "[o]ff and on through the years." The father was later ordered to pay an additional $53 per month for "arrears." By May 2021, "[t]he

---

[1] On cross-examination, counsel for the father suggested the order did not require court intervention to reinstate visitation. Counsel cited a separate provision of the order requiring the father "to demonstrate consistency and a commitment to the parenting process before anything more than supervised therapeutic parenting time" would be authorized. The previous paragraph, however, required court authorization.

arrears balance owed to [the mother was] $5254.87." The father testified he earned between $1100 and $1200 per week. He stated he "ha[d] wanted to" make extra payments toward child support, but he did not because he "wasn't really allowed to see [the child]."

The district court found the father "had extremely limited contact with" the child. The court characterized the father's "attempts to restart his relationship after his release from prison" as "feeble at best." With respect to the father's claim that the mother impeded his contact with the child, the court found the father "had the information necessary including phone numbers, location, and Kansas court orders . . . that provided him the means to have contact with" the child. The court stated the father was "essentially a complete stranger to" the child. As for payment of child support, the court found the father fell "significantly behind" and, while "[s]ome latitude" would be "allowed [him] due to his incarceration," the "arrears remain[ed] large."

The district court's findings are fully supported by the record. We conclude the cited statutory grounds for termination were satisfied.

"Once the court has found a statutory ground for termination under a chapter 600A termination, the court must further determine whether the termination is in the best interest of the child." *In re A.H.B.*, 791 N.W.2d 687, 690 (Iowa 2010). "The best interest of a child requires that each biological parent affirmatively assume the duties encompassed by the role of being a parent." Iowa Code § 600A.1(2); *In re B.H.A.*, 938 N.W.2d 227, 234 (Iowa 2020). As noted, the father expressed a desire to be a father to the child. We have no reason to question the sincerity of his desire. But "subjective intent of the parent," unless supported by

actions manifesting that intent, "does not preclude a determination that the parent has abandoned the child." Iowa Code § 600A.8(3)(c). Because the father's intent was not accompanied by actions to reinitiate contact with the child and make regular child support payments, we affirm the termination of the father's parental rights to the child.

**AFFIRMED.**